STATE OF MISSOURI at the relation of GEORGE K. GILPIN, B. A. STANTON and A. B. NEUDORFF, Judges of the County Court of Buchanan County, Relators, v. FORREST SMITH, State Auditor.—96 S. W. (2d) 40.

Court en Banc, July 8, 1936.

*Maurice Hoffman, Chas. W. Meyer, R. L. Douglas* and *Bowersock, Fizzell & Rhodes* for relators.

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondents; *John L. Graves* of counsel.

TIPTON, J.—This is an original proceeding in mandamus brought by the judges of the County Court of Buchanan County, Missouri, as relators against the respondent, the State Auditor, to compel his registration and certification under Section 2915, Revised Statutes 1929, of two bond issues of Buchanan County, Missouri.

The application for the alternative writ here, which was taken for the alternative writ, is in two counts. In the first count, the relators seek to compel the respondent to register and certify a bond issue of $300,000 of two and three-fourths per cent poor relief bonds of Buchanan County. In the second count the relators seek to compel the respondent to register and certify a bond issue of $1,434,238.22 of two and three-fourths per cent refunding bonds of Buchanan Coun-

ty. The purpose of these bonds is to retire an issue of five per cent judgment funding bonds of that county which will become due July 15, 1936. Both of these bond issues have been duly authorized by a vote of more than two-thirds of the qualified voters of that county voting at a special bond election held on March 24, 1936.

In the respondent's return, he admits that the special bond election was duly and regularly called by order of the County Court of Buchanan County, Missouri; that notices of the special election were duly given; that the special election was duly and regularly held and conducted in the manner and by the authorities provided by law; that the results thereof were duly and regularly determined; and that both bond issues were authorized by a vote of more than two-thirds of the qualified voters of the county voting at the special election. The return further admits that the county court of that county, by its orders duly made and entered of record, has authorized the execution, sale and delivery of the $300,000 of two and three-fourths per cent poor relief bonds and of the $1,434,238.22 of two and three-fourths per cent refunding bonds of that county; that these bonds are in proper form, and that these bonds have been duly executed and tendered to the respondent for registration and certification. The return states that the respondent refuses to register and certify the $300,000 of two and three-fourths per cent poor relief bond issue ''for the reason that there is no statutory authority in the State of Missouri authorizing or permitting Buchanan County, Missouri, to issue bonds for the purpose of providing funds for relief and care of the unemployed poor of said county'' and that respondent refuses to register and certify the $1,434,238.22 of two and three-fourths per cent of the refunding bonds ''for the reason that there is no statutory authority in the State of Missouri authorizing or permitting Buchanan County, Missouri, to issue bonds for the purpose of providing funds for retiring, redeeming, and paying off outstanding judgment funding bonds of said county of the character of the bonds referred to in the second count of relators' petition herein.''

To respondent's return, relators have filed a motion for judgment on the pleadings.

In respondent's brief, he states: ''It will be noted that but a single issue is presented to this Court for determination and that such issue, it being the same for each count, is whether Buchanan County, Missouri, has lawful authority to vote and issue the bonds in question.''

■ I. Relators admit that there is no express statutory authority for Buchanan County, Missouri, or for any county in the State, to vote and issue bonds to provide funds for the relief of the

unemployed poor of such county. But relators do contend that under Section 12 of Article X of the Constitution of Missouri a county in this State may issue bonds without express statutory authority, provided (1) that the bonds are issued only for a county public purpose; (2) that the bonds were authorized by two-thirds of the voters of the county voting on the proposition; and. (3) that the bonds and all other indebtedness of the county cannot, for general purposes, exceed five per cent of the total assessed valuation of the taxable property of the county to be ascertained by the assessment next preceding the last assessment previous to the incurring of the indebtedness.

In the case of State ex rel. Clark County v. Hackmann, 280 Mo. 686, 218 S. W. 318, the County Court of Clark County submitted to the voters the proposition of incurring an indebtedness in the sum of $103,944.04, and issuing bonds of the. county therefor, to pay judgments against the county. The bonds were duly authorized at. a special bond election by a vote of more than two-thirds of the electors voting on the proposition. We sustained the validity of the bonds on the grounds that Section 12 of Article X of our State Constitution in itself constitutes a grant of authority to contract indebtedness for a public purpose with the assent of two-thirds of the voters voting on the proposition, and within the debt limitation specified in Section 12 of Article X of the Constitution. We also held that the debt created by the bond issue was for a "public purpose" within the meaning of Section 3 of Article X of our Constitution.

On the authority of the case of State ex rel. Clark County v. Hackmann, supra, we hold that Section 12 of Article X of our State Constitution is a self-enforcing grant of power permitting a county to incur indebtedness for a county public purpose if authorized by two-thirds of the voters of the county voting at an election on such proposition, if such indebtedness be within the amount permitted by the Constitution.

It is admitted that the bonds were authorized by more than two-thirds of the voters of the county voting at the special election and that the bonds in question are within the amount of indebtedness that Buchanan County may incur under Section 12 of Article X of the Constitution. The only remaining question that we have to determine is whether the $300,000 of poor relief bonds of that county are for a public county purpose.

We are of the opinion that it is the duty of a county to support the poor who are within its boundaries. Section 12950, Revised Statutes 1929, is as follows:

"Poor persons shall be relieved, maintained and supported by the county of which they are inhabitants."

"An examination of the Revised Statutes of Missouri, 1929, clearly

shows that poor relief is a 'public purpose' and a governmental duty because by Sections 12950 and 12952 (Mo. Stat. Ann., secs. 12950 12952), counties are authorized to spend money in support of the poor; by Section 9986 (Mo. Stat. Ann., sec. 9986) a county pauper fund is provided; by Sections 12058 and 13942 (Mo. Stat. Ann., secs. 12058, 13942) county poor houses and county hospitals are maintained; Section 9697 (Mo. Stat. Ann., sec. 9697) gives authority to educate poor children that are blind or deaf; Section 12961 (Mo. Stat. Ann., sec. 12961) directs the county court to set aside, out of its annual revenues, a definite sum for the support of the poor; Article 1, Chapter 90, creates a state board of charities and defines its functions; Section 12930 (Mo. Stat. Ann., sec. 12930) requires this board to supervise public relief to the poor. . . .

''The good of society demands that when a person 'is without means, and unable, on account of some bodily or mental infirmity, *or other unavoidable cause*, to earn a livelihood' he is entitled to be supported at the expense of the public. 'It is immaterial how the alleged pauper is brought into need, as it is the fact of the situation and not the method of producing it that is important.' 'So the fact that a person's want is the result of a gross intemperance does not prevent him from securing relief as a pauper.' 'An able-bodied man, who can, if he chooses obtain employment which will enable him to maintain himself and family, but refuses to accept employment, is not entitled to public relief, though relief may be properly extended to the wives and children of such men.' [21 R. C. L. 705, 706.] It necessarily follows that an able-bodied man, who is unable to obtain employment on account of the economic conditions existing at the time, and who is without means of support, is entitled to public relief." [Jennings v. City of St. Louis, 332 Mo. 173, 58 S. W. (2d) l. c. 981.]

We think that these bonds, which provide for the care of the poor of Buchanan County, are for a county public purpose. From what we have just said, these bonds should be certified and registered.

II. The respondent refuses to register and certify the $1,434,238.22 of two and three-fourths per cent refunding bonds which have been authorized by more than two-thirds of the voters of Buchanan County voting at the special bond election because, he alleges there is no statutory authority permitting the voting and issuing of bonds by a county for the purpose of providing funds to retire, redeem and pay off outstanding judgment funding bonds. Those bonds were dated July 15, 1934, and were five per cent bonds, and were issued under Section 2892, Revised Statutes 1929, as amended by the Laws of Missouri, 1931, page 138, for the purpose of paying the valid judgment indebtedness of the county. Those bonds are due

July 15, 1936, and were not authorized by voters of the county. They are payable only out of the surplus revenues of the county, and at the present time the county has no surplus revenues to pay them.

We have already held in this opinion that Section 12 of Article X of our State Constitution is a self-enforcing grant of power permitting a county to incur an indebtedness for a county public purpose and an express statute is not necessary to give a county power to create such indebtedness.

It is admitted that these refunding bonds were authorized by more than two-thirds of the voters of Buchanan County voting on the proposition at the special bond election and that these bonds together with all other indebtedness of the county existing on the date of the bond election are under the general five per cent debt limitation contained in the Constitution. There certainly can be no doubt that they are for a county public purpose.

The issuance of these refunding bonds will not only preserve the credit of the county by enabling it to meet its obligations when they become due, but will greatly reduce the interest burden which will ultimately have to be paid by the taxpayers of the county. The outstanding judgment refunding bonds bear interest at the rate of five per cent per annum. The refunding bonds will bear interest at the rate of two and three-fourths per cent per annum, a saving to the county of over $30,000 per year.

"We conclude therefore that the payment of a valid existing debt by a county is a county public purpose." [State ex rel. Clark County v. Hackmann, 280 Mo. 686, l. c. 702, 218 S. W. 318.]

We think that these bonds should be certified and registered by the respondent.

It will be unnecessary for us to pass on the relators' contention that Sections 2922 and 2923, Revised Statutes 1929, authorizes Buchanan County to issue these bonds in question. Section 2922, supra, authorizes any county to submit to its qualified voters the proposition of issuing bonds of the county for the purpose of providing funds to satisfy and discharge any "judgment indebtedness" of the county. We will therefore not decide if the outstanding judgment bonds of Buchanan County constitute "judgment indebtedness" within the meaning of this statute.

It follows that our peremptory writ of mandamus should issue to compel the respondent to certify and register both bond issues in question. It is so ordered. All concur, except *Gantt, J.,* absent.